IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLIONIS
EASTERN DIVISION

| | |
|---|---|
| RLJ LODGING TRUST (as successor-in-interest to FelCor Lodging Trust Incorporated),<br><br>Plaintiff,<br><br>-against-<br><br>THE NATIONAL RETIREMENT FUND,<br><br>Defendant. | Case No.<br><br>**COMPLAINT TO VACATE**<br>**ARBITRATION AWARD** |

Plaintiff RLJ LODGING TRUST, on behalf of itself and certain of its subsidiaries (collectively, "RLJ"), by its attorneys Pryor Cashman LLP and Gair Eberhard Nelson Dedinas Ltd, as and for its complaint against Defendant THE NATIONAL RETIREMENT FUND ("Defendant" or "the Fund"), respectfully alleges as follows:

## NATURE OF ACTION

1. RLJ commences this action pursuant to Sections 4221(b)(2) and 4301 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA"), 29 U.S.C. §§ 1401(b)(2) and 1451, to modify and/or vacate the Ruling on Petition to Intervene issued by arbitrator Mark C. Stephenson in Intercontinental Hotels Group Control Group v. National Retirement Fund, AAA Case No. 01-16-0005-1768, on September 11, 2017 (the "Final Award"). The Final Award was issued pursuant to an arbitration procedure under Title IV of ERISA, 29 U.S.C. §§ 1381-1453. A true and correct copy of the Final Award is attached hereto as Exhibit A.

2578085

2. RLJ brings this action as successor-in-interest to FelCor Lodging Trust Incorporated and certain of its subsidiaries (collectively, "FelCor"), which merged into a subsidiary of RLJ called Rangers Sub I, LLC in a transaction that closed on August 31, 2017. (RLJ and FelCor are referred to herein collectively as "Plaintiff.")

## JURISDICTION AND VENUE

3. Jurisdiction is conferred on this Court by Sections 4221(b)(2), 4221(b)(3), 4301(a) and 4301(c) of ERISA, 29 U.S.C. §§ 1401(b)(2), 1401(b)(3), 1451(a) and 1451(c).

4. Venue is proper in this Court pursuant to Sections 4221(b)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1401(b)(2) and 1451(d), because Plaintiff presently does business in this District, and previously did business in this District during periods covered by the assessment of alleged withdrawal liability which is the subject hereof; and Defendant, upon information and belief, is partially administered in this District, does business and collects and receives pension fund contributions in this District; and the labor organization(s) whose collective bargaining agreement(s) give rise to employers' obligations to contribute such pension fund contributions, reside and do business in this District.

5. Pursuant to Section 4301(g) of ERISA, 29 U.S.C. § 1451(g), Plaintiff served the Pension Benefit Guaranty Corporation with a copy of this Complaint by certified mail addressed as follows: Chief Counsel, Office of the Chief Counsel, Pension Benefit Guaranty Corporation, 1200 K Street, NW., Washington, DC 20005-4026.

## PARTIES

6. Plaintiff is a Maryland real estate investment trust doing business in several states including the state of Illinois. Plaintiff's portfolio consists of 158 hotel properties with

2

2578085

approximately 31,180 rooms located in 26 states and the District of Columbia. Ten of the hotel properties Plaintiff owns are located in Chicago, Illinois. One of Plaintiff's former hotel properties, the Crowne Plaza Chicago Allerton Hotel, which is involved in the Fund's withdrawal liability assessment in dispute in <u>Intercontinental Hotels Group Control Group v. National Retirement Fund</u>, AAA Case No. 01-16-0005-1768, is located in Chicago, Illinois. Plaintiff's hotels operate under well-recognized global brands, including Courtyard by Marriott, Residence Inn by Marriott, Hilton Garden Inn, Homewood Suites by Hilton, Hyatt Place, Holiday Inn, Wyndham and Embassy Suites.

7. Defendant the National Retirement Fund is a Taft-Hartley trust fund with trustees equally represented by labor organizations currently and formerly affiliated with UNITE HERE and Workers United and employers that contribute to the Fund. The Fund is established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). The Fund, through its trustees, sponsors and administers the Plan. The Plan is a multiemployer plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). Upon information and belief, the Fund is partially administered in this District. In addition, the Fund collects and receives contributions from employers doing business in this District, including from Plaintiff during the relevant time period. Furthermore, the employees at the Crowne Plaza Chicago Allerton Hotel were represented by local UNITE unions which did, and continue to do, business and reside in this District, and employ representatives in this District. The Collective Bargaining Agreement between Chicago Joint Executive Board of the UNITE HERE, Local 1 and UNITE HERE, Local 450 and the Crowne Plaza Chicago Allerton Hotel, which required the Crowne Plaza Chicago Allerton Hotel to make contributions to the Fund was, upon information and belief, collectively bargained, entered into, and administered in this District.

## FACTUAL BACKGROUND

8. InterContinental Hotels Group Resources, Inc., an InterContinental Hotels Group company ("IHG"), is a multinational hotels company that operates and franchises thousands of hotels under 12 brands, including the Holiday Inn and Crowne Plaza Hotels & Resorts brands.

9. From time to time, IHG and/or its affiliates have served as the hotel manager for certain hotels owned by Plaintiff, including the three hotels that triggered the Fund's withdrawal liability assessment in dispute in <u>Intercontinental Hotels Group Control Group v. National Retirement Fund</u>, AAA Case No. 01-16-0005-1768.

10. On November 24, 2015, the Fund notified the IHG control group by letter that IHG had incurred a complete withdrawal from the Fund as of September 1, 2015, and was therefore liable to the Fund for withdrawal liability pursuant to ERISA (the "First Assessment"). The Fund claimed that, according to its calculations, IHG owed an estimated $26,612,379 of withdrawal liability. A true and correct copy of the First Assessment is attached hereto as Exhibit B.

11. Following extensive discussion between the Fund and IHG via e-mail and telephone, on March 10, 2016, the Fund notified the IHG control group by letter that it had "revised" its assessment of IHG's withdrawal liability (the "March 2016 Assessment"). In the March 2016 Assessment, the Fund claimed that IHG had incurred a complete withdrawal from the Fund as of February 28, 2013 and, according to its calculations, IHG owed an estimated $8,332,824 of withdrawal liability payable in forty (40) quarterly installments of $284,611.01 plus a final installment in the amount of $178,430.23. A true and correct copy of the March 2016 Assessment is attached hereto as Exhibit C.

12. Plaintiff has been paying the quarterly installment payments of $284,611.01 that are required to be paid to the Fund during the pendency of this dispute in accordance with Section 4219(c) of ERISA, 29 U.S.C. § 1399(c). A true and correct copy of an April 12, 2016 letter from

4

2578085

Plaintiff to the Fund with a check for the first quarterly installment of $284,611.01 is attached hereto as Exhibit D. A total of seven such quarterly payments have been made to-date by Plaintiff, totaling $1,992,277.07. IHG has not made any such payments.

13. According to the March 2016 Assessment, the Fund assessed IHG for an alleged 2013 complete withdrawal under 29 U.S.C. § 1383. The three hotels the March 2016 Assessment refers to are: (i) the Crowne Plaza Chicago Allerton Hotel (the "Allerton"); (ii) HPT-TRS, Inc. d/b/a the Bristol/Crowne Plaza Philadelphia Hotel (the "Crowne Plaza"); and (iii) the Holiday Inn Historic District – Philadelphia Hotel (the "Historic District Hotel"). Each of these hotels was managed, at one point in time, by IHG on behalf of Plaintiff.

14. IHG ceased managing the Allerton after it was sold by Plaintiff in 2006. IHG continued managing the Crowne Plaza after Plaintiff's 2006 sale on behalf of its new owners, an affiliate of Hospitality Properties Trust ("HPT"), and ceased managing the Crowne Plaza on or about June 17, 2012 after the management of the hotel was transferred to an affiliate of HPT. HPT remains the owner of the Crowne Plaza. IHG ceased managing the Historic District Hotel on or about January 18, 2013 after Plaintiff, as the owner of the hotel, transferred the management of that hotel from IHG to Wyndham Hotel Management, Inc. ("Wyndham Management").[1] Plaintiff to date is still the 100% owner of the Historic District Hotel.

15. The transaction resulting in the alleged withdrawal of IHG from the Fund, which is the subject of the March 2016 Assessment, is this final transaction pursuant to which IHG was replaced as manager of the Historic District Hotel by Wyndham Management. Thus, the Historic District Hotel is the relevant hotel with respect to the Fund's determination that a withdrawal has

---

[1] Following the transfer of the management of the Holiday Inn Historic District – Philadelphia from IHG to Wyndham Management, the Holiday Inn Historic District – Philadelphia changed its name to the Wyndham Philadelphia Historic District.

5

2578085

occurred. Immediately prior to IHG being replaced as hotel manager in 2013, there were 68 UNITE HERE union employees at the Historic District Hotel (the "Union Employees") for whom contributions were being made to the Fund under the CBA (as defined below).

16. Despite the Fund's withdrawal liability assessment, Plaintiff (i) has owned the Historic District Hotel since 1998, (ii) remains the owner of the Historic District Hotel to this day, (iii) has been contractually obligated to contribute to the Fund at the Historic District Hotel since 1998, and (iv) has funded all such contributions from 1998 through the date of this Complaint. When Wyndham Management replaced IHG as manager of the Historic District Hotel in 2013, 100% of the Union Employees remained employees at the hotel, and Plaintiff remained contractually responsible for contributions to the Fund on their behalf.

17. Plaintiff was contractually obligated to contribute to the Fund at the Historic District Hotel at all relevant times pursuant to the terms of the Collective Bargaining Agreement between the Historic District Hotel and UNITE HERE Local 274, AFL-CIO for the period from June 1, 2008 through May 31, 2014 (the "CBA") and the hotel management agreement between IHG and Plaintiff for the Historic District Hotel (the "HMA").

18. Section 2 of Article 16 of the CBA provides that the Historic District Hotel, which is owned by Plaintiff, was the employer and had the obligation to make monthly contributions to the Fund. Neither IHG nor Wyndham Management has ever been party to the CBA or otherwise obligated to contribute to the Fund.

19. The HMA provided that Plaintiff "shall be solely responsible for, as an Operating Cost, and shall reimburse and hold Manager harmless from and against all expenses, costs or charges related to or incidental to any personnel, including the General Manager, employed in the operation of the [Historic District Hotel]." IHG was not a party to the CBA or otherwise obligated

6

to contribute to the Fund, and all costs related to the employees of the Historic District Hotel, including contributions to the Fund, were solely Plaintiff's responsibility. To the extent IHG transmitted any such contributions to the Fund, it did so as Plaintiff's agent.

20. Plaintiff has funded all monthly contributions to the Fund on behalf of the Union Employees at the Historic District Hotel from 1998 through the present day. These contributions continued at the Historic District Hotel without interruption, both before and after the change in hotel manager from IHG to Wyndham Management. In fact, <u>100% of the Union Employees remained at the Historic District Hotel</u> following Wyndham's replacement of IHG as manager in 2013, and Plaintiff continued to fund contributions to the Fund on their behalf following IHG's replacement. The change in hotel manager had no effect on the amount or timing of payments to the Fund on behalf of the Union Employees, and the Fund was in no way adversely affected by such change.

21. The applicable definition of an employer under the MPPAA is "an entity that has assumed a contractual obligation to make contributions to a pension fund." *Transpersonnel, Inc. v. Roadway Express, Inc.*, 422 F.3d 456, 460 (7th Cir. 2005).

22. Both before and after Plaintiff transferred the management of the Historic District Hotel from IHG to Wyndham Management, Plaintiff was the employer under the MPPAA because Plaintiff was the entity that "assumed a contractual obligation to make contributions to" the Fund at the Historic District Hotel during the relevant time period. Consequently, as an employer, Plaintiff should be entitled to intervene in the proceedings and the Arbitrator erred in denying Plaintiff's motion to do so. Furthermore, because Plaintiff is the employer under the MPPAA, no withdrawal occurred.

2578085

23. Plaintiff and IHG timely requested review of the March 2016 Assessment pursuant to Section 4219(b)(2)(A) of ERISA, 29 U.S.C. § 1399(b)(2)(A), prior to the June 8, 2016 deadline stipulated by the Fund. On June 6, 2016, Plaintiff's counsel sent Richard Rust of the Fund an e-mail (the "June 6, 2016 e-mail") stating that "[a]ttached is IHG's and [Plaintiff's] request to review the [Fund's] March 10, 2016 assessment of withdrawal liability upon IHG." The correspondence attached to the June 6, 2016 e-mail, which was also sent via Federal Express and facsimile, stated that "[p]ursuant to hotel management agreements with IHG or its affiliates, [Plaintiff] has an obligation to indemnify IHG for certain employment-related expenses, and IHG (and its counsel) have agreed that we can jointly submit this request seeking a review of the IHG withdrawal liability assessment." A true and correct copy of the June 6, 2016 e-mail and attachment is attached hereto as Exhibit E.

## ARBITRATION PROCEEDINGS

24. On November 28, 2016, IHG timely initiated an arbitration challenging the Fund's assessment of withdrawal liability in accordance with the Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes of the American Arbitration Association in New York, New York (the "Arbitration") pursuant to Section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1).

25. In a letter accompanying its demand for arbitration with the American Arbitration Association (the "Demand Letter"), IHG asserts that it is not the employer for purposes of assessing withdrawal liability and, therefore, there was no withdrawal by a covered employer that triggered withdrawal liability. IHG also contends that the withdrawal liability assessed by the Fund was improperly calculated. A true and correct copy of the Demand Letter is attached hereto as Exhibit F.

26. The Demand Letter also notices the appearance of Plaintiff and asserts that Plaintiff, like IHG, disputes the assessment of withdrawal liability by the Fund.

27. The American Arbitration Association appointed Mark C. Stephenson, Esq. (the "Arbitrator") to serve as arbitrator in the Arbitration.

28. On June 19, 2017, Plaintiff submitted a Petition to Intervene in the Arbitration and Affirmation of Joshua Zuckerberg in Support of its Petition to Intervene (the "Petition to Intervene") to the Arbitrator. A true and correct copy of the Petition to Intervene is attached hereto as Exhibit G.

29. In response, the Fund submitted its Opposition to Plaintiff's Petition to Intervene and Declaration of Frank P. Sabatini, Esq. in Support of its Opposition to Petition to Intervene (the "Opposition to Petition to Intervene") to the Arbitrator on July 19, 2017. A true and correct copy of the Opposition to Petition to Intervene is attached hereto as Exhibit H.

30. Plaintiff submitted its Reply in Further Support of Its Petition to Intervene and Affirmation of Joshua Zuckerberg in Further Support of Its Petition to Intervene (the "Reply") to the Arbitrator on August 2, 2017. A true and correct copy of the Reply is attached hereto as Exhibit I.

31. On September 11, 2017, the Arbitrator issued his ruling on Plaintiff's Petition to Intervene (the "Final Award").

32. In the Final Award, the Arbitrator erred as a matter of law in denying Plaintiff's Petition to Intervene. The Arbitrator found that Plaintiff's Petition to Intervene "falls short" when applying Rule 24(a)(2) of the Federal Rules of Civil Procedure, which finding was based on erroneous legal conclusions. The Arbitrator also rejected Plaintiff's claim that it is an employer

for purposes of participating in the Arbitration, which conclusion was based on the Arbitrator's failure to apply the correct definition of "employer" under the MPPAA.

## FIRST CAUSE OF ACTION
### (Vacatur or Modification of the Final Award)

33. Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 32 as if fully set forth herein.

34. This action is timely as it was commenced within 30 days of the issuance of the Final Award that Plaintiff petitions this Court to vacate and/or modify.

35. The Arbitrator erred as a matter of law in finding that Plaintiff does not satisfy the intervention standard under Rule 24(a)(2) of the Federal Rules of Civil Procedure ("Rule 24(a)(2)").

36. Rule 24(a)(2) provides that, on timely motion, a court must permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

37. The Arbitrator found that "[a]pplying the Rule 24(a)(2) standard, [Plaintiff's] petition falls short" because its interests in the Arbitration "are collateral to the issues presented by the [A]rbitration," it has failed to show how the disposition of the issues presented by the Arbitration may impede its interests or its ability to protect its interests, and its interests are adequately protected by IHG.

38. Contrary to the Arbitrator's erroneous legal conclusions, Plaintiff has a direct, substantial interest in the Arbitration. Plaintiff has been making the quarterly installment payments

10

2578085

required under the March 2016 Assessment during the pendency of this dispute, totaling nearly $2 million to date.

39. A finding that a withdrawal has occurred will directly affect Plaintiff. While Plaintiff has been making the quarterly installment payments required under the March 2016 Assessment during the pendency of this dispute, IHG will most likely assert an indemnity claim against Plaintiff under the HMA in the event of an adverse ruling regarding the Fund's assessment of withdrawal liability.

40. Plaintiff's interests are also not adequately protected by IHG. As a matter of principle, no one is going to represent Plaintiff's financial interests as ardently as Plaintiff. Moreover, Plaintiff is best situated to comprehensively explain why it is the employer under the MPPAA at the relevant hotel.

41. As the entity that has already paid nearly $2 million to the Fund in quarterly installments during the pendency of this dispute, Plaintiff has the greater interest in disputing the Fund's withdrawal liability assessment. Moreover, the lasting financial impact of an adverse finding of withdrawal liability could potentially be absorbed solely by Plaintiff.

42. In light of the foregoing, Plaintiff is entitled to intervene in the Arbitration under Rule 24(a)(2).

43. The Arbitrator also erred as a matter of law in finding that Plaintiff is not an employer for purposes of participating in the Arbitration because "[Plaintiff] identifies no actions or functions that it undertakes that would create an employer-employee relationship and, in fact, disclaims all direct or indirect control over terms and conditions of employment of the employees working at the hotel[ ] at issue."

2578085

44. The Arbitrator's erroneous legal conclusion was based on Plaintiff's statement in a footnote in its Reply that it "does not concede that it is an "employer" for any other purpose or under any other statute [other than the MPPAA], nor did [Plaintiff] have any direct or indirect control over the terms and conditions of employment at the hotel in question at any time . . . ."

45. It is irrelevant whether Plaintiff has "direct or indirect control over terms and conditions of employment of the employees working at the hotel[] at issue." The relevant standard for determining an "employer" under the MPPAA is whether an entity **is contractually obligated to contribute to the Fund**. Rather than applying this standard, the Arbitrator erroneously applied, without citation or support, an undefined "employer" standard apparently based on control over terms and conditions of employment, which is irrelevant for purposes of this dispute.

46. Plaintiff was at all relevant times the entity contractually obligated to contribute to the Fund at the Historic District Hotel. Furthermore, both before and after the alleged withdrawal at the Historic District Hotel, Plaintiff actually did fund the monthly contributions due to the Fund under the CBA and continues to do so through the date hereof.

47. As the employer under the MPPAA, Plaintiff is entitled to intervene in the Arbitration.

48. The Arbitrator's erroneous legal conclusions require that the Final Award be vacated and/or modified.

49. Plaintiff is also entitled to its costs and expenses incurred in connection with this action, and its reasonable attorneys' fees, pursuant to Section 4301(e) of ERISA, 29 U.S.C. § 1451(e).

## SECOND CAUSE OF ACTION
### (Declaratory Judgment)

50. Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 49 as if fully set forth herein.

51. Section 2 of Article 16 of the CBA provides that the Historic District Hotel, which is owned by Plaintiff, was the employer and had the contractual obligation to make the contributions to the Fund.

52. Similarly, the HMA provides that Plaintiff "shall be solely responsible for, as an Operating Cost, and shall reimburse and hold Manager harmless from and against all expenses, costs or charges related to or incidental to any personnel, including the General Manager, employed in the operation of the [Historic District Hotel]."

53. Plaintiff transferred the management of the Historic District Hotel from IHG to Wyndham Management on or about January 18, 2013. Notwithstanding this management change, 100% of the Union Employees remained employed at the Historic District Hotel following the appointment of Wyndham Management as hotel manager, and Plaintiff continued to fund contributions to the Fund on their behalf.

54. Before and after Plaintiff transferred the management of the Historic District Hotel from IHG to Wyndham Management, Plaintiff was the employer under the MPPAA because Plaintiff was at all times contractually obligated to contribute to the Fund at the Historic District Hotel.

55. Plaintiff has at all times fulfilled its obligation under the CBA to make monthly contributions to the Fund on account of the Union Employees, and these monthly contributions continue to be funded by Plaintiff to this day.

13

56. Plaintiff is thus entitled to an order pursuant to ERISA, 29 U.S.C. § 1001 et seq., the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and/or Rule 65 of the Federal Rules of Civil Procedure (i) declaring that it is the employer of the Union Employees at the Historic District Hotel for purposes of the MPPAA, and that, accordingly, no withdrawal has occurred; and (ii) staying arbitration proceedings in, and/or restraining and enjoining Defendant from participating in, Intercontinental Hotels Group Control Group v. National Retirement Fund, AAA Case No. 01-16-0005-1768, pending the adjudication of Plaintiff's Complaint to Vacate Arbitration Award.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. enter an Order vacating or modifying the Final Award;

B. enter an Order that Plaintiff is the employer of the Union Employees at the Historic District Hotel for purposes of the MPPAA, as it was contractually obligated to contribute to the Fund on their behalf at all relevant times;

C. enter an Order that no withdrawal occurred;

D. enter an Order staying arbitration proceedings in, and/or restraining and enjoining Defendant from participating in, Intercontinental Hotels Group Control Group v. National Retirement Fund, AAA Case No. 01-16-0005-1768, pending the adjudication of Plaintiff's Complaint to Vacate Arbitration Award;

E. grant Plaintiff its costs and expenses incurred in connection with this action, and its attorneys' fees, pursuant to Section 4301(e) of ERISA, 29 U.S.C. § 1451(e); and

F. grant Plaintiff such other and further relief as this Court deems appropriate.

2578085

Dated: October 6, 2017

GAIR EBERHARD NELSON DEDINAS LTD

By: ___/s/ Jeffrey S. Eberhard___
       Jeffrey S. Eberhard (ARDC #6276471)

1 East Wacker Drive
Suite 2600
Chicago, Illinois 60601
Phone: (312) 600-4904
E-mail: jeberhard@gairlawgroup.com

*Attorneys for Plaintiff RLJ Lodging Trust,
as successor-in-interest to FelCor
Lodging Trust Incorporated*

PRYOR CASHMAN LLP

By: ___LaKeisha M.A. Caton___
    Joshua Zuckerberg (pro hac to be filed)
    LaKeisha M.A. Caton (ARDC #6323349)
7 Times Square
New York, New York 10036
Phone: (212) 421-4100
E-Mail: jzuckerberg@pryorcashman.com

*Attorneys for Plaintiff RLJ Lodging Trust,
as successor-in-interest to FelCor
Lodging Trust Incorporated*

2578085